CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 1 2 2021

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## DANVILLE DIVISION

| | | |
|---|---|---|
| **RACHEL T.,** | ) | |
| | ) | |
| **Plaintiff** | ) | Civil Action No. 4:20-CV-12 |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KILOLO KIJAKAZI, Commissioner of** | ) | |
| **Social Security,** | ) | **By: Michael F. Urbanski** |
| | ) | **Chief United States District Judge** |
| | ) | |
| **Defendant** | ) | |

### MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Joel C. Hoppe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("R&R") on July 2, 2021, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Rachel T. ("Rachel") has filed objections to the R&R and this matter is now ripe for the court's consideration. As discussed more fully below, the court **OVERRULES** one of Rachel's objections, **SUSTAINS** two of her objections, and **REMANDS** this case for further proceedings.

### I. Background

Rachel filed an application for disability insurance benefits (DIB) on September 13, 2016, alleging disability beginning on January 1, 2015. Rachel was 39 years old at the alleged onset date. She sought disability based on chronic uveitis, ankylosing spondylitis, arthritis,

Crohn's disease, patellofemoral syndrome in her left knee, high risk medication use, vertigo, high pressure in her eyes, tinnitus, and hypermobility joint syndrome. R. 188.

The ALJ found that Rachel last met the insured status requirements on December 31, 2017, making that her "date last insured" (DLI). The ALJ found that her impairments of Crohn's disease, ankylosing spondylitis, degenerative joint disease in her lumbar spine, and plantar fibromatosis (status post bilateral fasciotomies), were severe under the regulations, but that none of them met or medically equaled a listed impairment. The ALJ determined that Rachel had the capacity to perform light work, except she could only stand and walk for up to four hours per workday, could occasionally use foot controls with her lower right extremity, could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, or crawl, have occasional exposure to vibration and workplace hazards such as dangerous moving machinery, but no exposure to unprotected heights or tasks involving uneven terrain. The ALJ found that Rachel could do her past relevant work as a customer service representative. Based on the testimony of a vocational expert, the ALJ found that Rachel could also do the work of a cashier or a mail clerk, both of which are light and unskilled. The ALJ concluded that there was work in the economy for Rachel and therefore she was not disabled. R. 15-27. The Appeals Council denied Rachel's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Rachel has objected to several of the magistrate judge's findings.

2

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .")

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed,

objections that simply reiterate arguments raised before the magistrate judge are considered to

be general objections to the entirety of the report and recommendation. See Veney v. Astrue,

539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely
> reformatting an earlier brief as an objection "mak[es] the initial reference to the
> magistrate useless. The functions of the district court are effectively duplicated
> as both the magistrate and the district court perform identical tasks. This
> duplication of time and effort wastes judicial resources rather than saving them,
> and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of
> Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will

not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated

as a general objection, which has the same effect as would a failure to object.  Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions.

Rather, judicial review of disability cases is limited to determining whether substantial evidence

supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving

disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v.

Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a

de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter

v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the

record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind,

Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a

directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Rachel argued to the magistrate judge that in May 2018 she was diagnosed with small fiber neuropathy and that the ALJ committed harmful error at Step 2 of the sequential evaluation[3] by failing to find that small fiber neuropathy was a severe medically determinable impairment. She asserted that if the ALJ had made that finding, it would have accounted for the lack of abnormal physical findings and diagnostic studies in the record because one of the characteristics of small fiber neuropathy is that a person can have the ailment but still have a

---

[2] Detailed facts about Rachel's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 28) and in the administrative transcript (ECF No. 10) and will not be repeated here except as necessary to address her objections.

[3] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

normal or near normal physical and neurological examination. Because Rachel's DLI was December 31, 2017, in order to qualify for DIB the ALJ would have had to find that any impairments caused by the small fiber neuropathy rendered her disabled prior to that date.

The magistrate judge considered Rachel's argument but found that a diagnosis of a medically determinable impairment can only come from "acceptable medical sources," such as licensed physicians and that Rachel's diagnosis was made by a physician assistant, who is not an acceptable medical source. The magistrate judge also found that the ALJ had summarized Rachel's medical records, and the records indicated that her doctors were considering the small fiber neuropathy diagnosis six months before her DLI. Thus, the magistrate judge found that the ALJ had considered the evidence of small fiber neuropathy during the relevant time. The magistrate judge further found that even if the ALJ erred at Step 2 of the sequential evaluation by not finding that Rachel had a medically determinable impairment of small fiber neuropathy before her DLI, the error was harmless because the ALJ gave adequate consideration to the effects of the omitted impairment. Finally, the magistrate judge stated that Rachel was asking the court to reweigh the evidence that the ALJ had considered to conclude that the ALJ should have found her disabled during the relevant time.

Rachel makes the following objections to the magistrate judge's R&R: (1) The magistrate judge erred when he concluded small fiber neuropathy was not diagnosed by an acceptable medical source; (2) the magistrate judge erred when he found that the summary of evidence from two doctors showed that the ALJ considered small fiber neuropathy in her decision; (3) the ALJ's failure to find small fiber neuropathy to be a severe impairment before

Rachel's DLI was not harmless error; and (4) the magistrate judge erred in concluding that

Rachel is asking the court to reweigh the evidence.

**V. Analysis**

Rachel's objections are based on the ALJ not discussing whether Rachel was diagnosed

with small fiber neuropathy. Small fiber neuropathy is described as follows:

> Small fiber neuropathy occurs when the small fibers of the peripheral nervous
> system are damaged. Small fibers in the skin relay sensory information about
> pain and temperature. In the organs, these small fibers regulate automatic
> functions such as heart rate and breathing.

> A diagnosis of small fiber neuropathy can be a sign of an underlying health
> condition, such as diabetes. Often, though, no underlying cause is identified.

> This condition causes sensory symptoms such as pain, burning, and tingling.
> These symptoms often start in the feet and progress up the rest of the body.
> They may become more severe over time.

CARLY VANDERGRIENDT & DEBORAH WEATHERSPOON, WHAT IS SMALL FIBER

NEUROPATHY? (2018), https://www.healthline.com/health/small-fiber-neuropathy (last

viewed Aug. 3, 2021). Symptoms of small fiber neuropathy include burning, tingling, or

prickling, short bursts of pain, and loss of sensation. Id. Symptoms can be mild or severe.

Small fiber neuropathy tends to affect the feet first and progress upward. At later stages, it

may affect the hands. Id. Small fiber neuropathy can be the first sign of an underlying

condition such as diabetes. Immune system disorders also may cause small fiber neuropathy.

Id. Doctors use several techniques to diagnose small fiber neuropathy, including taking a

medical history, and ordering nerve conduction tests and electromyography, skin biopsies,

reflex tests, blood tests, genetic testing, and imaging tests. Id.

> One of the hallmarks of a pure small fiber neuropathy is a normal or near
> normal physical and neurologic examination. The coordination, motor, and

reflex examinations will be normal. Light touch, vibratory sensation, and proprioception also may be normal, resulting in diagnostic confusion in some situations. Patients may have decreased pinprick, decreased thermal sensation, or hyperalgesia in the affected region. There may be mildly decreased vibratory sensation in some individuals.

ALEXANDRA HOVAGUIMIAN & CHRISTOPHER GIBBONS, DIAGNOSIS AND TREATMENT OF PAIN IN SMALL FIBER NEUROPATHY, https://www.ncbi.nlm.nih.gov/pmc/articles/ PMC3086960/ (last viewed Aug. 3, 2021).

Treatment of small fiber neuropathy depends on the underlying condition. For example, if it is caused by diabetes or prediabetes, it is treated by managing blood sugar levels and maintaining a healthy weight. When the cause has not been identified, treatment focuses on managing symptoms. VANDERGRIENDT & WITHERSPOON, supra.

At the hearing, Rachel testified that she struggles going up and down steps because her legs are shaky and weak up to three days a week. She said she is in pain every day although some days are better than others. She has pain in her back and stomach, pain and burning in her legs and numbness in her feet. She has to lie down often because she feels tired and weak. She said she could stand for 30 minutes, walk for 15 minutes, and sit for 45 minutes. On bad days she sometimes does not get out of bed. On good days she can move around and do light housework, but still needs to lie down. She sometimes needs help standing up from a chair and she loses her balance and stumbles. She sometimes uses a hiking stick when walking on uneven ground. Some days walking around the house makes her feel like she has run a marathon or feel so exhausted that she cannot function. She described it as feeling like she has the flu all the time. Rachel stated that the nurse practitioner told her that the diagnosis of small

fiber neuropathy might explain her balance issues and also the numbness, tingling, burning, and nerve pain. R. 35-60.

The ALJ found that Rachel's medically determinable impairments (Crohn's disease, ankylosing spondylitis, degenerative joint disease, lumbar spine, and plantar fibromatosis (status post bilateral fasciotomies)) could reasonably be expected to cause the alleged symptoms, but that her statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. The ALJ cited to diagnostic testing of Rachel's spine in 2014 which was unremarkable, revealing only mild diffuse arthritis and a knee X-ray that revealed only a nonaggressive lesion involving the distal femur consistent with ossifying fibroma or fibrous cortical defect. R. 23, 394, 424. A cervical spine MRI in October 2016 showed degenerative changes at C5-C6 with mild left neural foraminal narrowing and an MRI of the thoracic and lumbar spine was unremarkable with no evidence of ankylosing spondylitis. A nerve conduction study also was normal, revealing no evidence of radiculopathy or neuropathy. R. 23, 641, 660-661. The ALJ further noted that findings on exams have been minimal and that Rachel has been found to have a normal gait, no joint synovitis, normal range of motion in her spine, and intact sensation and strength throughout her extremities, except for some reduced but present pinprick sensation in her distal feet and hands, kyphosis, hypermobility, mild 4/4 dorsiflexion, and mild tenderness to palpation in her finger and wrist joints. She also had a normal balance test in June 2107, has had negative straight leg tests, and has not required an assistive device for

ambulation.[4] The ALJ also found that Rachel experienced improvement in her foot pain with surgery and improvement in her joint pain with Humira.

On June 12, 2017, Rachel's treating physician, Lisa Deneen Hobson-Webb, M.D., commented that Rachel needed a skin biopsy to assess for small fiber neuropathy and the biopsy was ordered the next day. R. 1152-1153. On April 9, 2018, it was noted in Rachel's chart that "[b]ased on the biopsy results, we can determine if further laboratory workup is needed for a correctable cause of small fiber neuropathy, if your biopsy is consistent with this. Dr. Hobson-Webb will let you know about the results." R. 1384. On April 27, 2018, Rachel underwent the biopsy and skin specimens were taken from her left thigh and left calf. The clinical impression given for the biopsy was "burning pain and numbness in feet." R. 1400. On May 4, 2018, a report was prepared by Charles Shao, M.D., and Stephen S. Chin, M.D., Ph.D., at Therapath Neuropathology. The "Epidermal Nerve Fiber Density Test" (ENFD) showed that the values from Rachel's left thigh were abnormally low, and the values from her left calf were in the normal range. In a box marked "DIAGNOSIS," it was stated, "Lt Thigh, skin biopsy: Skin with significantly reduced Epidermal Nerve Fiber Density, consistent with small fiber neuropathy. Lt Calf, skin biopsy: Skin with normal Epidermal Nerve Fiber Density." R.1412. In a section entitled "Interpretation of Results," Dr. Chin stated "The presence of normal ENFD does not by itself rule out a diagnosis of small fiber neuropathy. An abnormally reduced ENFD also does not indicate a particular cause for the neuropathy or predict a response to therapy. The diagnosis and treatment of any medical condition depends

---

[4] The court notes that one of Rachel's health care providers recommended in April 2018 that she use "trekking poles for fall prevention when on uneven ground outdoors." R. 1382. Rachel testified that she used the poles when walking on uneven surfaces. R. 47.

on the patient's clinical presentation and the results of all laboratory investigations as interpreted by the physician." R. 1413.

On May 29, 2018, physician assistant (PA) Holly O'Sullivan noted that she had called Rachel to tell her that the skin biopsy result was consistent with small fiber neuropathy. R. 1423. On June 5, 2018, PA O'Sullivan noted that the spoke to Rachel about "her diagnosis of small fiber neuropathy, and that this may be related to another of her autoimmune diseases (ankylosing spondylitis, Crohn's disease) but we can discuss other treatable causes." R. 1433. Following additional testing, PA O'Sullivan noted that she called Rachel on June 19, 2018 "to inform her about the results, and let her know that as of now no other treatable causes of small fiber neuropathy were identified." R. 1436. On June 6, 2018, PA O'Sullivan electronically signed a record indicating that Rachel was diagnosed with small fiber neuropathy. R. 1434-1435.

### A. Diagnosis by an Acceptable Medical Source

The parties agree that the ALJ made no mention of small fiber neuropathy in her decision. The magistrate judge found that Rachel could not show that small fiber neuropathy qualified as a medically determinable impairment in her case because she was not diagnosed by an acceptable medical source. At the time Rachel filed her application for DIB, the regulations required that the sources who could provide evidence to establish an impairment included licensed physicians and other health care professionals but excluded nurse practitioners and physician assistants. 20 C.F.R. § 404.1513(a); SSR 06-3p, 2006 WL 2329939, at *2 (S.S.A. 2006). Evidence from "other sources" such as physician assistants, could be used

12

to show the severity of the individual's impairments and how they affect an individual's ability to function. Id.

The regulations have since changed, and for cases filed after March 27, 2017, information from "medical sources" about diagnoses may be considered as part of the evidence presented to establish disability. "Medical sources" are no longer limited to licensed physicians. 20 C.F.R. § 404.1513(b)(3) (eff. March 28, 2017). Rachel's case was filed before March 27, 2017 and the magistrate judge correctly determined that PA O'Sullivan was not an acceptable medical source at the time Rachel applied for benefits. Therefore Rachel's objection on this issue is **OVERRULED**.

However, it does not appear that the ALJ relied on the "acceptable medical source" regulation to determine that Rachel does not have a diagnosis of small fiber neuropathy. Rather, the ALJ made no mention of small fiber neuropathy in her decision. Thus, the issue in this case is not whether the ALJ erred by not finding that Rachel had a medically determinable impairment of small fiber neuropathy, but whether the ALJ erred because she ignored the issue of small fiber neuropathy.

"It is well understood that it is the ALJ's obligation to develop the record. The case law clearly imposes on an ALJ a duty to develop the record, rather than rely on only the evidence submitted by the claimant, even if the claimant is represented." Fleming v. Barnhart, 284 F.Supp.2d 256, 272 (D. Md. 2003) (emphasis in original). In addition, "[w]here the ALJ fails in [her] duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980).

13

The record mentions several times that the skin biopsy was consistent with small fiber neuropathy. Dr. Chin noted that the results of the biopsy were consistent with small fiber neuropathy and PA O'Sullivan opined that Rachel had a diagnosis of small fiber neuropathy. At the hearing in front of the ALJ, Rachel and her counsel both stated that a skin biopsy had confirmed a diagnosis of small fiber neuropathy, "which would explain some of the symptoms." R. 37-38, 55.

Despite multiple references to small fiber neuropathy, the ALJ made no mention of such a diagnosis in her opinion. The ALJ had a duty to develop the record to determine whether Rachel had such a diagnosis. Therefore, despite the fact that PA O'Sullivan was not an "acceptable medical source," remand is appropriate because the ALJ failed to develop the record to determine whether small fiber neuropathy was a medically determinable impairment for Rachel and whether it accounted for some of her allegedly disabling symptoms.

### B. Summary of Evidence From Other Doctors

In the Fourth Circuit, "'district courts have adopted the view that an ALJ does not commit reversible error by omitting an impairment at step two, so long as the ALJ considers the impairment [at] subsequent steps;' however, for the omission to be harmless, the impairment must be 'sufficiently considered.'" Dimailig v. Saul, No. 1:19-cv-441 (LMB/JFA), 2020 WL 6749856, at *6 (E.D. Va. Nov. 17, 2020) (quoting Woodson v. Berryhill, 2018 WL 4659449, at *4-5) (E.D. Va. Aug. 7, 2018)). See also Bonvillain v. Berryhill, No. 1:18-cv-978 (TCB), 2019 WL 1232840, at *14 (E.D. Va. Mar. 15, 2019) (finding remand not warranted when ALJ failed to consider plaintiff's neck pain anywhere in the decision but plaintiff put forth no evidence to indicate that the ALJ's consideration of her neck pain would potentially

alter the RFC formulation in any meaningful way); Burton v. Berryhill, No. CBD-17-3681, 2018 WL 5312162, at *4 (D. Md. Oct. 26, 2018) (finding remand not warranted where ALJ only briefly referred to plaintiff's chronic rhinitis, periodic limb movement disorder, and Dupuytren's contracture, but plaintiff failed to cite evidence showing the impairments had an impact on his ability to function and "the ALJ is under no obligation to consider every single condition a claimant may have[.]") But see Baker v. Berryhill, 2019 WL 4148350, at *8 (E.D. Va. Aug. 12, 2019) (remanding because ALJ failed to discuss plaintiff's migraine headaches and noting that "upon hearing that Plaintiff was suffering from migraines at the administrative law hearing, the ALJ should have reviewed the record for this impairment and discussed it in her RFC analysis.").

Prior to the biopsy, and prior to Rachel's DLI, Dr. Hobson-Webb noted that small fiber neuropathy might have been causing her symptoms and she suggested that the biopsy be ordered to assess for small fiber neuropathy. R. 1152. Rachel saw PA Mary Jeanne Driebeek on August 29, 2017, who noted that Rachel had not yet undergone an evaluation for small fiber neuropathy. R. 1189. The magistrate judge found that because the ALJ summarized the records of these medical sources at R. 22, that she had considered the diagnosis of small fiber neuropathy. The magistrate judge cited in support Michael E. v. Comm'r of Soc. Sec., No. 4:18cv47, 2020 WL 3117458 (W.D. Va. Mar. 16, 2020) and Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).

In Reid, the plaintiff complained that he was disabled by degenerative disc disease among other impairments and argued to the district court that the ALJ failed to consider evidence produced during a two-year period and failed to consider the combined effects of

his impairments. Id. at 864-865. A magistrate judge found that Reid failed to show harm from any failure by the ALJ to specifically cite to evidence from the two-year period and that the record indicated that the ALJ and the Appeals Council had considered all the evidence before them. The district court adopted the recommendation of the magistrate judge and affirmed the denial of benefits. Id. at 865. On appeal, Reid raised the same arguments that he had in district court. Id. at 865-66.

The Fourth Circuit found that "[w]hile the Commissioner's decision must 'contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based,'" Id. at 865 (quoting 42 U.S.C. § 405(b)(1)), "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.'" Id. (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). The court further noted that an ALJ who states that she has considered the entire record will be taken at her word absent evidence to the contrary. Id. Additionally, the court found that the ALJ specifically referenced Reid's "history of thoracic and lumbar fusion," noting that the treatment notes showed that Reid was responding well to treatment with minimal complaints. Id. Notably, the court next stated that "Reid has failed to point to any specific piece of evidence not considered by the Commissioner that might have changed the outcome of his disability claim. Id. (emphasis in original). In Michael E., the magistrate judge similarly found that the ALJ summarized all the evidence in the record relating to the claimed impairments. Michael E., 2020 WL 3117458 at *7-8.

Rachel, in this case, has pointed to evidence relating to the biopsy results that were consistent with small fiber neuropathy that does not appear to have been considered by the

ALJ. The ALJ made no reference to the biopsy or small fiber neuropathy and it is unclear whether she considered the evidence. Accordingly, the court disagrees with the magistrate judge's conclusion that the ALJ considered the small fiber neuropathy diagnosis and **SUSTAINS** Rachel's objection on this point.

### C. Adequate Consideration of Limiting Effects

The magistrate judge also concluded that even if the ALJ should have found at Step 2 of the sequential evaluation that Rachel suffered from small fiber neuropathy and that it was a severe impairment, the error was harmless because the ALJ gave adequate consideration to the effects of the omitted impairment. The magistrate judge noted that the ALJ found that Rachel's other severe impairments could reasonably be expected to cause the symptoms that she attributes to her post-DLI diagnosis of small fiber neuropathy. He reasoned that requiring the ALJ to reconsider Rachel's allegations in light of a new small fiber neuropathy diagnosis would not have changed the ALJ's finding that the other impairments could reasonably be expected to cause her symptoms.

The ALJ found that while Rachel's impairments could reasonably be expected to cause her symptoms, her statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the findings on examination and diagnostic testing. The ALJ cited diagnostic testing of Rachel's spine in 2014, a knee x-ray, a cervical spine MRI in 2016, an MRI of the thoracic and lumbar spine, and a nerve conduction study, none of which the ALJ found to be consistent with Rachel's allegations of severe pain in her back and lower extremities. The ALJ also noted that on examination, Rachel was found to have a normal gait, no joint synovitis, normal reflexes, normal range of motion in her spine, and intact sensation

and strength throughout her extremities, except for some reduced but present pinprick sensation in the distal feet and hands, kyphosis, hypermobility, mild 4/4 dorsiflexion, and mild tenderness to palpation in her finger and wrist joints. The ALJ also noted that Rachel had a normal balance test in June 2007, negative straight leg tests, and had not required an assistive device for ambulation. R. 23-24.

The ALJ also rejected the opinion of Rachel's treating rheumatologist that Rachel could not do even low stress work because anxiety would increase her symptoms of fatigue, muscle and joint pain, and swelling of her eye due to uveitits. The rheumatologist opined that Rachel's symptoms would be severe enough to interfere with her attention and concentration, that she could do very little walking, could stand or walk for less than two hours per day, sit for two hours, but for less than one hour at a time before needing to stand up, would need to lie down for one hour per day, three times per day, could not lift any weight, rarely perform postural activities and would be absent from work more than four days per month. The ALJ found the rheumatologist's limitations to be inconsistent with his treating notes, most of which showed no significant strength or motion deficits in her extremities, a normal gait, normal mood and affect, no deficits in attention or concentration and no evidence of a breathing impairment. R. 24. The magistrate judge found that the ALJ's narrative RFC assessment showed that she applied the correct legal standards and logically explained how she weighed the conflicting evidence about the intensity, persistence, and functionally limiting effects of symptoms related to Rachel's conditions.

Rachel objects to this finding and argues that after this case was fully briefed, the Fourth Circuit Court of Appeals issued its opinion in Arakas v. Comm'r, 983 F.3d 83 (4th Cir.

2020), which reiterated that in the Fourth Circuit, "'while there must be objective medical evidence of some condition that could reasonably produce the pain there need not be objective evidence of the pain itself or its intensity.'" Id. at 95 (citing Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hines v. Barnhart, 453 F.3d 559, 564-65 (4th Cir. 2006)).

In Arakas, the plaintiff alleged disability in part on her diagnosis of fibromyalgia, "a disease whose 'symptoms are entirely subjective,' with the exception of trigger point evidence." Id. at 96 (quoting Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996)). Physical examination of patients with fibromyalgia are typically normal, with a full range of motion, no joint swelling, and normal muscle strength and neurological reactions. Id. (citing Green-Younger v. Barnhart, 335 F.3d 99, 108-09 (2d Cir. 2002) and Lisa v. Sec. of the Dep't of Health & Human Servs., 940 F.2d 40, 45 (2d Cir. 1991)). In assessing Arakas' RFC at Step 4 of the sequential evaluation, the ALJ found that her subjective complaints regarding the severity, persistence, and limiting effects of her symptoms were "not reliable" and "not completely consistent with the objective evidence." Arakas, 983 F.3d at 94. The ALJ emphasized that the doctors' reports failed to show the clinical and laboratory abnormalities one would expect if the plaintiff were disabled. Id. at 96.

The Arakas court held that it is error for an ALJ to improperly discount a plaintiff's subjective complaints of pain and fatigue based largely on the lack of objective medical evidence substantiating her statements. Id. The ALJ relied principally on findings of a full range of motion and the lack of joint inflammation to discount Arakas' subjective complaints as being inconsistent with the objective evidence, but in doing so he applied an incorrect legal

standard. Id. The error was "particularly pronounced" in a case involving fibromyalgia, a disease whose symptoms are entirely subjective. Id.

In this case, the record shows that in March 2017, prior to her DLI, Rachel complained of feeling pins and needles and that her toes and feet felt numb. She also complained of burning pain in her legs and knees. She reported stumbling and felt off balance. R. 733. In May 2017, she complained of burning and easy fatigue in her legs with occasional symptoms in her hands. R. 1382. In April 2018 she reported patchy distal sensory loss in her upper and lower extremities. PA O'Sullivan commented that "Her frequent stumbling and several falls are likely related to sensory loss, as there is no lower extremity weakness observed." Id.

The ALJ discounted Rachel's subjective complaints of pain and burning in her feet and her other symptoms because he found them inconsistent with the objective evidence in the record. The ALJ noted that her reflexes were intact and she had intact sensation and strength throughout her extremities. R. 23. Arakas instructs that an ALJ errs when she relies on objective evidence to find that complaints of pain and fatigue are unsubstantiated, especially when the ailment typically is not diagnosed based on objective factors. Small fiber neuropathy, like fibromyalgia, is not typically diagnosed via objective tests. See HOVAGUIMIAN & GIBBONS, supra. ("One of the hallmarks of a pure small fiber neuropathy is a normal or near normal physical and neurologic examination.") See also Cosby v. Berryhill, No. 16 C 11504, 2017 WL 4237048, *3 (N.D. Ill. Sept. 25, 2017) (citing JINNY TAVEE, MD, LAN ZHOU, MD, SMALL FIBER NEUROPATHY: A BURNING PROBLEM, Cleveland Clinic Journal of Medicine (May 2009)) (finding ALJ erred when he characterized effects of small fiber neuropathy as mild because plaintiff had full strength and range of motion of her upper and lower extremities

because strength is not affected by small fiber neuropathy); Ali v. Colvin, No. 3:15-CV-00632-KI, 2016 WL 1670965 (D. Or. Apr. 27, 2016) (remanding in part because ALJ did not consider the possibility of normal examination findings with a diagnosis of small fiber neuropathy).

Rachel reported feeling pins and needles, burning pain, and numbness in her feet prior to her DLI, and such symptoms could affect her ability to walk and stand. In the RFC assessment, the ALJ found that she could walk and stand for up to four hours per day. Under the holding in Arakas, the ALJ erred when she determined that Rachel's symptoms were not as severe as alleged because they were inconsistent with the objective evidence in the record. Without an assessment of whether Rachel had small fiber neuropathy prior to her DLI, and if so, whether it caused symptoms that affected her RFC, it is impossible to assess whether the ALJ's determination that Rachel was not disabled prior to her DLI is supported by substantial evidence. Accordingly, the court **SUSTAINS** Rachel's third objection and **REMANDS** this case for further development of the record.

### D. Credibility Determination

The magistrate judge stated in his R&R that Rachel was asking the court to reweigh the evidence that the ALJ considered to find that Rachel is disabled. Rachel objects to this finding. Because the court finds that remand is appropriate in this case for other reasons, it will not address this objection.

## VI. Conclusion

For the reasons stated, the court will sustain Plaintiff's second and third objections to the Report & Recommendation, grant her motion for summary judgment, and remand this case to the Commissioner for further proceedings consistent with this opinion.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: _august 12, 2021_

Michael F. Urbanski